

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

April 19, 2021

**BY ECF & HAND**

The Honorable Philip M. Halpern
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Diamonte Galloway,* **20cr458 (PMH)**

Dear Judge Halpern:

      The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for April 26, 2021 at 11 a.m. For the reasons explained below, the Government submits that a sentence within the Guidelines range of 87 to 108 months' imprisonment (the "Guidelines Range"), would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A.  Factual Background**

      1.   The Offense Conduct

      The relevant offense conduct is set forth in part in the Pre-Sentence Report ("PSR"). In or about April 2019, the defendant's co-conspirator ("CC-1") contacted a confidential informant (the "CI") and offered to sell him a firearm. PSR ¶ 9. The CI contacted law enforcement, who directed the CI to make controlled buys of firearms from CC-1. *Id.* CC-1 subsequently traveled from North Carolina to New York on multiple occasions and sold the CI two .45 caliber pistols and two AR-15 rifles during controlled buys in April and May 2019. ¶¶ 9-18. On June 25, 2019, CC-1 was arrested for intentional murder, manslaughter and criminal possession of a weapon and indicted by a New York State grand jury on the same charges. ¶ 18. Those charges are currently pending. *Id.*

      Two days later, on June 27, 2019, the CI received a call from codefendant Jared Miller-White (referred to in the PSR as "CC-2"). ¶ 19. Miller-White identified himself as CC-1's "boy." *Id.* The next day, on June 28, 2019, Miller-White contacted the CI again, and stated that he could get additional guns for the CI and that the guns that CC-1 had provided the CI earlier had come from him. ¶ 20. The CI contacted law enforcement, who directed the CI to make controlled buys of the firearms. ¶¶ 20-21.

Approximately a month later, on July 23, 2019, Miller-White traveled from North Carolina to New York, met the CI in Yonkers, and sold him three pistols. ¶ 22. Miller-White introduced the CI to Diamonte Galloway, the defendant, later the same day. ¶ 23. Miller-White told the CI that Galloway was his cousin and that Galloway could supply the CI with additional firearms. *Id.* Miller-White added that he and Galloway could supply the CI with "ice" (a street name for methamphetamine). *Id.* Galloway stated that they knew someone who could get bags of "ice" and could bring it up during the next deal. *Id.* The CI requested a sample to make sure that the "ice" was of sufficient quality to sell. *Id.*

Approximately two weeks later, on August 8, 2019, Miller-White traveled from North Carolina to New York, met the CI in Yonkers, and sold him three additional pistols. ¶¶ 24-25. He returned to New York approximately a month later, on September 11, 2019, and sold the CI another three pistols, a revolver, and an AR-style rifle. ¶ 28-29. He also provided the CI with 3.5 grams of methamphetamine as a "sample." *Id.*

Approximately a month later, on October 10, 2019, Miller-White contacted the CI and told him that he would be sending his cousin (Galloway) from North Carolina to deliver more firearms. ¶ 32. Galloway arrived with the weapons approximately a week and a half later on October 21, 2019. ¶¶ 34-36. Galloway met the CI in a parking lot of a hotel in Yonkers and entered the back seat of the CI's vehicle with a bag. ¶ 36. Galloway then took seven pistols and two AR-style rifles from the bag. *Id.* Several of the pistols were loaded with ammunition. *Id.* Galloway handed the CI the pistols and placed the AR-style rifles in the back seat. *Id.* The CI handed Galloway $11,300 for the firearms and Galloway got out of the car. The firearms remained in the vehicle after he departed. *Id.* Law enforcement arrested Galloway as he was walking back to the hotel. ¶ 37.

Galloway is not a licensed importer, licensed manufacturer, or licensed dealer of firearms. ¶ 39. Of the firearms sold by Galloway to the CI on October 21, 2019, at least three of them had previously been reported stolen. ¶ 40. A complete set of photos of the guns is attached hereto as <u>Exhibit A</u>.

      2. <u>The Defendant's Guilty Plea</u>

Galloway waived indictment approximately a year later on September 4, 2020. ¶ 1. On or about September 29, 2020, Galloway pleaded guilty pursuant to a plea agreement to firearms trafficking in violation of Title 18, United States Code, Section 922(a)(1)(A), 924(n), and 2. ¶¶ 4-5. The plea agreement calculated the base offense level as 27, the Criminal History Category as 3, and the stipulated Guidelines Range as 87 to 108 months' imprisonment (the "Guidelines Range"). ¶ 5.

**B. The Presentence Report**

The PSR recommends a sentence within the Guidelines Range of 87 months' imprisonment. PSR at 19. The PSR nonetheless recommends a below Guidelines sentence of 87 months' imprisonment. PSR at 26. The PSR notes, among other things, that this is Galloway's 16th arrest and fourth criminal conviction. *Id.* His prior criminal convictions include larceny, possession of stolen goods, and failing to report an address change to the DMV. *Id.* Galloway was

sentenced to terms of imprisonment of up to 19 months. *Id.* at 27. Nonetheless, the prior sentences were incapable of deterring him from committing the instant offenses. *Id.*

**C. The Defense Submission**

The defense submission asks the Court to impose a sentence of 42 months' imprisonment. The submission notes that Galloway is a father and has a history of drug abuse. The submission also argues, among other things, that Galloway's role was limited and is more akin to a mule or a courier.

Discussion

*1. Applicable Law*

As the Court is well aware, the Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider not only the Guidelines, but also the six other factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing (as set forth below); (3) "the kinds of sentences available"; (4) any relevant policy statement by the Sentencing Commission; (5) "the need to avoid unwarranted sentence disparities among defendants"; and (6) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

*2. A Sentence Within the Guidelines Range Is Appropriate in this Case*

For the reasons set forth below, the Government submits that a sentence within the Guidelines Range of 87 to 108 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

*a. The Nature and Circumstances of the Offense and the Need for the Sentence Imposed to Reflect the Offense's Seriousness*

A sentence within the Guidelines Range is necessary to reflect the seriousness of the offense. Illegal weapons trafficking has only one purpose—to put weapons of murder in the hands of those who should not have them. Galloway, in turn, was not a "mule" or "courier." He personally trafficked *over a dozen* lethal firearms. He travelled across at four states to make the transactions. He did so multiple times. And he trafficked these instruments of death for nothing more than personal profit. Indeed, on one day alone, he personally sold 7 pistols and 2 AR-style rifles, some of which were already loaded:



GALLOWAY also did not just sell firearms. He sold multiple high capacity magazines, whose only purpose is inflicting slaughter:





Simply put, Galloway's crime is real and incredibly serious. He put countless people in danger when he transported these loaded weapons from North Carolina to New York. And if this had not been a sting operation, these weapons would be on the street and in the hands of whoever was willing to pay.

### b. The Defendant's History and Characteristics

Galloway's lengthy criminal history and his repeated violations of court-imposed supervision also counsel a sentence within the Guidelines Range. As the PSR notes, this is Galloway's fourth criminal conviction. PSR ¶¶ 58-60. In 2013, he was convicted of breaking and entering a motor vehicle and larceny, and was sentenced to a term of 4 to 14 months' imprisonment. *Id.* Rather than turn his life around, he violated the terms of his probation by stealing approximately $4,000 in jewelry and illegally acquiring a shotgun and shotgun ammunition. *Id.* He was then sentenced to a term of 8 to 19 months' imprisonment. *Id.* This was still not enough to deter him.[1]

To be sure, the letters in support of the defense submission indicate that Galloway has the strong support of his family members. This factor is positive and gives hope that Galloway may someday turn his life around. But this support has not deterred him from nearly a decade of criminal conduct culminating in the sale of deadly weapons.

### D. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Correct Guidelines Range of 87 to 108 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: _____
Mathew S. Andrews
Stephanie Simon
Assistant United States Attorneys
(212) 637-6526

---

[1] As the PSR also notes, during the next several years, he was arrested seven more times for felony larceny, breaking or entering a motor vehicle, possessing a stolen motor vehicle, illegally possessing a firearm, assault on his then-girlfriend, felony possession of marijuana and cocaine while incarcerated, and attempted sale of a stolen vehicle. ¶¶ 70-76. These arrests were dismissed without leave by the district attorney's office for unknown reasons. *Id.*